THE TOWN OF STRAFFORD, appellees *vs.* THE TOWN OF HART-LAND, appellants.

ORANGE,<br>March,<br>1830.

That an appeal from an order of removal must be taken to the next term of the Court in the same county after service of the order, if there be sufficient time.

This was an appeal from an order of removal made by two justices for the county of *Orange*, on the 18th November, 1828, for the removal of the paupers, *Richard Skinner*, *Rachana*, his wife, and *Electa*, their infant daughter, from *Strafford* to *Hartland*. *Hartland* was served with a copy of the record of the order, some short time before the setting of the county court, for the county of *Orange*, December term, 1828. But the warrant of removal was executed, and the paupers actually delivered to the overseer of *Hartland*, on the 27th of March, 1829, and not before that time. *Hartland*, soon after appealed to the June term of said court, 1829. At that term, *Strafford* moved to dismiss the appeal, and the county court ordered it dismissed accordingly. Exceptions were filed, and the case removed to this Court ; and the question was, whether the appeal was taken in due season.

*Marsh and Collamer, for the appellants.*—The 6th section of the statute, relating to the legal settlement and support of the poor, provides, " That if any overseer or overseers of any town " or place, shall think himself or themselves aggrieved by any or-

ORANGE,
*March,*
1830.

Strafford
*vs.*
Hartland.

" der or *warrant* of removal as aforesaid, he or they may appeal
" therefrom to the county court next to be holden within and for
" the county in which such order was made, or from which such
" stranger *shall be removed.*"—*Stat.* 371.—The very expressions
of this clause seem to show, that the legislature intended that the
appeal should be taken to the next term of the county court after
the order or warrant of removal should be executed. The words
" *warrant of removal*" give an appeal from the warrant, that is,
the execution of the warrant by the actual removal of the paupers.
Again, the expression, " or from which such stranger shall be re-
moved," very strongly indicates the same intention. The legis-
lature by this expression could have intended nothing less than
that the appeal should be taken to the court holden next after the
actual removal of the paupers. The appeal is given to the over-
seer or overseers, who should think himself or themselves ag-
grieved by any order or warrant of removal, as aforesaid, that is
*made and executed* in the manner before pointed out in the stat-
ute. *Aggrieved* means *injured ;* but the party is not injured till
put to actual expense.

But we are not without authorities on this point. By the
statute 3 and 4 *Wm. & Mary, Ch.* 2, it is enacted, " That all
" such persons, who think themselves aggrieved with any such
" judgement of the said two justices, may appeal to the next gen-
" eral quarter sessions of the peace, to be held in the county,
" riding, city or town corporate, or liberty, from which the said
" person was so removed."—2 *Bott's Poor Laws*, 819.

In the construction of this statute it has been repeatedly decid-
ed, that the appeal lies to the next sessions of the peace after the
pauper was removed.—See the case of *Millbrook* vs. *St.
Johns, Southampton,* 2 *Bott's Poor Laws,* 834 ; also *King* vs.
*Norton,* 2 *Bott's* 835.—2 *Stra.* 831.—*Rex* vs. *The justices of East
Riding,* 2 *Bott's* 840.—*Doug.* 193.—*Rex* vs. *Justices of Hert-
fordshire,* 2 *Botts,* 840.—3 *T. R.* 504.

It is believed, that independent of the statute of 1817, our stat-
ute must have received the same construction. It may, then, be
enquired how this last mentioned statute can alter the construc-
tion of the former act. The statute of 1817, *(p.* 383,*)* in the 3d
section, transfers the jurisdiction of pauper causes, and directs ap-
peals in them to be taken to the Supreme, instead of the county
court ; and, in the same section, directs that the appeal shall be
taken to the Supreme Court to be holden in the county where
such order shall be made, next after notice of said order shall be
given to the adverse party. The 5th section of the same act di-
rects, " that when any order of removal shall be made," &c. " an

ORANGE,
March,
1830.

Strafford
vs.
Hartland.

" attested copy of such order shall be left with some one of the
" overseers of the poor of the town, to which said pauper shall be
" ordered to remove, within thirty days after the making of such
" order." It is believed, that, independent of the 5th section, the
whole subject, as to the time of appealing, would have been left
precisely where it was under the act of 1797; and the ex-
pression " next after notice of said order shall be given to the ad-
verse party," in the 3d section would be construed to intend such
notice as the act of 1797 required : and this view of the subject
seems to be confirmed by the last clause in the third section, "sub-
ject to the provisions and regulations contained in the sixth and
seventh sections of said act". This being correct, the mere posi-
tive enactment in the fifth section directing a copy of the records
of the order of removal to be furnished to the adverse party, with-
in thirty days of its being made, ought to have no effect on the
proceedings. The fifth section does not appear to have been in-
serted with any view to any bearing on the third. But it is obvi-
ous to remark, that the third section of the act of 1817 is, at least,
virtually, repealed by the act of 1824, transferring the jurisdic-
tion in *pauper cases* from the supreme, to the county court.—
*Stat.* 120. The 3rd section of the act of 1817 certainly regu-
lates only appeals in pauper causes *to the Supreme Court*; and
does not, in terms, embrace appeals in the same class of causes to
the county court. The act of 1797 gave appellate jurisdiction in
pauper causes to the county court; and this is the general law on
the subject of pauperism, to which all the subsequent acts refer. In
1817, the legislature passed an act transferring the same
appellate jurisdiction to the Supreme Court, and regulating
the mode, and fixing the term of the Supreme Court, at which
the appeal shall be entered. In 1824, the legislature, by general
expression, transfered again the jurisdiction to the county court,
without saying to what term of the county court the appeal shall
be taken. Now, how can it be said, that, because appeals to the
Supreme Court are to be entered at the next term, therefore, they
are to be entered at the corresponding term of the county court ?

*Mr. Buck, for the appellees,* submitted the case without brief
or argument.

HUTCHINSON, J. after stating the case, pronounced the opinion
of the Court.—The question to be decided is, whether the town,
appealing from an order of removal, must take their appeal to the
next court after they are served with the order required by the
statute of 1817, or whether they may take the same to the next
term after actual removal, according to the statute of 1797.

ORANGE;
March,
1830.

Strafford
vs.
Hartland.

The object of the statute of 1817 is, to create a change in many particulars of the pauper system, yet leaves the original statute unrepealed except by contrary provisions. The principal changes are, 1st, in the mode of gaining a settlement; 2d. the giving notice of the order of removal, and requiring this within thirty days, whether there has or has not been a warrant issued and removal made; and 3d. the allowing the appeal to the Supreme Court. In this the same expression is used as was used in the former statute, with regard to the time; "to the next term," is the expression. The next term in the act of 1797, meant the next term after the actual removal, and the copy of the warrant left as notice. Such copy was the only notice provided in the act. The same expression in the act of 1817 means as it says, "the next term after notice;" and notice in this expression means such notice as this statute has directed; to wit, an attested copy of the order made by the justices. The Court decided this on the present circuit in a suit between the town of *Essex* and the town of *Milton*. We there decided, that the order of removal, from which *Milton* did not appeal after such notice of the order, had fixed the pauper upon *Milton*, though *Essex* could not recover for the support of the pauper, after recovery from sickness, till actual removal; especially as the pauper might have been removed had his removal been attempted.

The fair construction of the statute of 1824, cited by the appellants, is, to make the whole system as it would be, if the word *county* were inserted in the place of the word *supreme*, in the statute of 1817; thereby allowing the appeal to the county court.

The English statute cited is as definite as possible, giving the appeal to the court next after removal. Our statute of 1797 is not so definite; yet it must necessarily bear the same construction, for the reasons before given.

The appellants contend, that they were not aggrieved till the actual removal, and cite a case in point. This is truly so under the English statute, and our statute of 1797; but not so under the statute of 1817. The fixing the pauper upon them by an order of removal and notice, is sufficient aggrievance to entitle them to an appeal.

The other authorities cited are in point to show, that the party must not be deprived of an appeal by a removal, or, under the act of 1817, by an order and copy served, before a term, and yet so late, that no appeal could have been taken to the first term by any reasonable diligence. That seems reasonable, for such a case. But, the papers in this case show, that there was sufficient time in

which to appeal, after the notice served, and before December term of the county court.

The judgment of the county court is affirmed with additional cost.

*Marsh* and *Collamer*, for the appellants.

*Buck*, for the appellees.