THE TOWN OF POULTNEY *v.* THE TOWN OF SANDGATE.

*Pauper. Judgment.*

It is not requisite to the validity of an order of removal of a pauper, and its binding force upon the town to which the removal is ordered to be made, that there be an actual removal of the pauper under such order.

It is a sufficient service of a notice of an order of removal if a certified copy of the same be left by an officer at the house of the usual abode of the overseer of the town to which the removal is ordered to be made, with a person of sufficient discretion then resident therein, even though the overseer never receives such copy, nor gets any actual notice of the proceeding.

The notice of the order of removal may be served upon the town to which the removal is ordered before the day fixed for the removal.

A valid order of removal of which notice is legally served on the town to which the removal is ordered, and from which no appeal is taken, is conclusive both as to the settlement of the pauper at the date of the order, and also as to all other facts necessary to uphold the order.

APPEAL from an order of removal of Rebecca Williams and

her five minor children from the town of Poultney to the town of Sandgate, which order of removal was made December 24th, 1859. Plea that the last legal settlement of the paupers was not in Sandgate, on which plea issue was joined. The cause was tried by the court at the September Term, 1861, KELLOGG, J., presiding.

It was claimed on the part of the plaintiff that the said Rebecca was the wife of one Jacob Williams, who, it was conceded, was the son of one William Williams ; and the plaintiff further claimed that William Williams had a legal settlement in Sandgate ; that Jacob Williams followed and had the settlement of his father ; and that Rebecca Williams, as the wife of Jacob Williams, followed and had his settlement. The defendant denied that the said Rebecca was ever lawfully married to Jacob Williams, or that they ever cohabited as husband and wife.

On trial, the plaintiff introduced a copy of a previous order for the removal of said Rebecca Williams, and her family, to wit: her three children,—Frances, Charles, and Egbert, from the town of Poultney to the town of Sandgate, as paupers, made on the complaint of the overseer of the poor of the town of Poultney, on the 11th of July, 1854, by two justices of the peace of the county of Rutland, and also the original complaint and warrant, with the return of service thereon, on which such order was predicated, as evidence in the case. This order of removal required the said Rebecca to remove, with her family and effects, from Poultney to Sandgate, on or before the first day of August, 1854. The defendant waived all objections to said complaint, warrant, and return, on account of the original papers, instead of certified copies of the same, being introduced as evidence ; and all of the said papers were admitted under and subject to such other objections, as might be taken to the same, by the defendant. The copy of this order of removal had a warrant annexed to it for service on the town of Sandgate, pursuant to the provisions of the Compiled Statutes, p. 132, § 13 ; and the plaintiff then introduced in evidence the said warrant, and the officer's return thereon, dated 19th July, 1854, showing that service of the copy of the order of removal, and of such warrant, was made on the 19th July, 1854, by Ira M. Clark, as

the constable of the town of Poultney, on Reuben T. Hurd, the overseer of the poor of the town of Sandgate, by leaving attested copies thereof, with the officer's return thereon, at the house of the usual abode of Hurd in Sandgate, with Mary Ann Monroe, a person stated in the return to be "of sufficient discretion," then resident therein. The defendant waived all objection to said warrant and return on account of the original papers, instead of certified copies of the same, being introduced as evidence, and the warrant and return were admitted subject to such other objections as might be taken to the same by the defendant. It was conceded by the defendant that Reuben T. Hurd was the overseer of the poor of the town of Sandgate, from March, 1853, until March, 1855. The plaintiff further claimed, that under, and by virtue of, this last order of remaval, and the said proceedings thereon, the legal settlement of the said Rebecca became fixed and established in Sandgate, and that this fact, having been settled by a legal adjudication, and notice thereof, from which no appeal was taken, was no longer open to controversy between the parties. In reference to the service of the copy of this order of removal so made by Clark, the court found the following facts to be established by the evidence, viz.: Clark was constable of Poultney during the year next following the annual town meeting held in that town in March, 1854, and, as such constable, he held a warrant for the removal of the said Rebecca, pursuant to said order of removal, before and at the time she was therein ordered to remove as aforesaid; but he could not find her, so that he could execute the warrant, at any time within its life; and she was not in fact removed under this order. At the time of the service of the copy of this order of removal, and of the warrant thereon, Hurd boarded at the house of one Hoyt, in Sandgate. Clark, when he made this service, went to Hoyt's house, and found nobody there, except Mary Ann Monroe, who was then from twelve to fifteen years of age, and was employed as a hired servant in Hoyt's family, and some small children. Clark inquired of her for Hurd. She replied that he went away on that morning and was expected to return on that night, or the next day; and she also said that Hoyt and his wife were both away from home. Clark

Poultney v. Sandgate.

told her what his business was, and called for a pen and ink; and she went and got the same for him; and he then and there wrote his return of service on a copy of the order and precept, and left the copy with her, all as stated in his return, and requested her to deliver it to Hurd when he should return home, and she said that she would do so. She was then a "person of sufficient discretion" within the purview of the statute provisions relating to the manner of the service of writs of summons. But she never in fact delivered to Hurd the copy of the order of removal and precept, so left with her, nor gave him any information in respect to the same; and Hurd never heard of the same until about three months before the trial in this case; and there was no evidence in the case tending to show that any other officer of the town of Sandgate had any knowledge or information in respect to the said order of removal, or the service of the copy of the same, until after the commencement of the present proceedings.

In relation to the alleged marriage of Rebecca Williams to Jacob Williams, the court found that the ceremony of marriage was performed between them, by a Methodist clergyman, in Hampton, New York, a town adjoining Poultney, on the 20th of October, 1844, under such circumstances as the defendant claimed made the marriage invalid, but which circumstances, under the decision of the court, it does not become necessary to state. A few days after such ceremony and marriage, and before any cohabitation as husband and wife, or sexual intercourse had occurred between him and the said Rebecca, Jacob Williams absconded from Poultney, and has ever since resided in the state of New York. About two years afterwards the said Rebecca, having heard that the said Jacob was dead, and, also, that he had another wife living at the time of his marriage to her as aforesaid, and relying on the truth of these reports, was married at Middletown, Vermont, to one Kenyon; and from that time Kenyon and she cohabited and lived together as husband and wife, until his death, which occurred in July, 1861; and Kenyon was the father of her five children, named in the present order of removal; and each of these children was born after her marriage to Kenyon. After her marriage to Kenyon

they resided in Middletown about three months, and after that resided in Poultney until removed to Sandgate in 1859, under the present order of removal.

The court decided that the last legal settlement of the said Rebecca was at the time of making the order of removal, appealed from, in the town of Sandgate, and rendered judgment for the plaintiff accordingly, to which the defendant excepted.

*A. L. Miner* and *E. N. Briggs,* for the defendant.

*J. B. Beaman* and *E. Edgerton,* for the plaintiff.

PECK, J. This is an appeal by the town of Sandgate from an order of removal of Rebecca Williams, a pauper, and her family of five children (named in the order,) from Poultney to Sandgate, made December 24th, 1859. Trial in the county court upon an issue of fact whether at the time of the order the last legal settlement of said Rebecca Williams was in Sandgate. The county court found the issue in favor of the town of Poultney, and rendered judgment accordingly. The facts are stated in detail, presenting a number of questions for the consideration and decision of this court.

To prove the issue the plaintiff introduced a previous order of removal of the same pauper, Rebecca Williams, from Poultney to Sandgate, dated July 11th, 1854, under which it appears that no actual removal was ever made, the officer not being able to find the pauper within the life of the warrant of removal, and from which order of removal no appeal was taken; and also the original complaint and warrant upon which said order was made, and the return of service, the defendant waiving all objection to this complaint, warrant, and return on account of the original instead of a certified copy being introduced, but not waiving any other objection thereto. This copy of the order has annexed to it a warrant or notice for service on the town of Sandgate pursuant to the statute of 1850 (Comp. Stat. p. 132, § 13,) with the return of service thereon, dated July 19th, 1854, by the constable of Poultney, by which it appears that he served it on Reuben Hurd, overseer of the poor

Poultney *v.* Sandgate.

of the town of Sandgate, on that day, by leaving a copy of the order and warrant, with his return thereon, at the house of the usual abode of said Hurd, in Sandgate, with Mary Monroe, a person of sufficient discretion, then resident therein. These papers were also introduced, subject to such objections as might be made to them, except on account of some of them being originals instead of certified copies. It was conceded by the defendant that Reuben Hurd was overseer of the poor of Sandgate from March, 1853, to March, 1855, and of course he was such at the time of the service of this order. The plaintiff insists that this order, made in 1854, served on Sandgate within thirty days after its date as above stated, and not appealed from, is conclusive that at the date of the order the pauper's settlement was in Sandgate, and that it entitles the plaintiff to recover, and so claimed in the county court, and that it precludes the defendant from showing that in fact she had not then and never had any settlement in Sandgate.

The defendant denies that it has such effect, and interposes various objections to these proceedings, from which it is claimed they are inoperative to fix the settlement in Sandgate.

1. It is claimed by the defendant's counsel that by the statute on this subject no order of removal can be made and served that will be binding upon the adverse town, unless an actual removal is made under it, unless it be in certain exceptional cases provided for by statute, as where the pauper is sick and unable to be removed, or is confined in jail, and then it is claimed the pauper must be removed as soon as a recovery from sickness or a release from confinement will permit. The defendant insists that there is no provision in the statute for serving the order or giving notice of it, except when there is an actual removal, unless the case comes under one of the exceptions above stated, and hence in this case insists that the justices had no right to issue the notice, and the officer no power to serve it. If this is the correct view of the statute, this objection is fatal. But such is not the construction of the statute. The act of 1797 was so in effect. That statute provided for an appeal to the next term, and was construed to mean the next term after notice of the order; but that statute provided for no other notice

of the order of removal than the copy left at the time of the actual removal; hence no appeal was allowed until the removal was made. But ever since the act of 1817 the law has been otherwise. That act provided that the town should give notice of the order by a copy of the order left with the town against which the order was made, within thirty days after the making of the order, and allowed an appeal to the term next after notice of the order. In *Strafford* v. *Hartland*, 2 Vt. 565, decided under the act of 1817, a copy of the order of removal was left with Hartland just before the December Term of the court, but the warrant of removal was not executed, or the paupers removed, till after that Term of the court, and not till the 27th of March following. Hartland appealed to the June Term, 1829, the next term after the removal, but not the next term after notice of the order, and the court decided that the appeal should have been taken to the next term after notice of the order, notwithstanding no removal had then been made, and dismissed the appeal as being taken too late. The statute now in force, and which is the same as the Revised Statutes, as to taking the appeal and delivering a copy of the order certified by the justices within thirty days is substantially like the statute of 1817, although not quite so explicit as to the time of taking the appeal. Comp. Stat. p. 132, § 12, provides that a copy of the order certified by the justices shall be left with the overseer of the adverse town within thirty days after the making of such order, unless such pauper shall be removed within that time. In *Braintree* v. *Westford*, 17 Vt. 141, the court put the same construction on the Revised Statutes as was put upon the act of 1817 in *Strafford* v. *Hartland*, above referred to, and dismissed the appeal because not taken to the next term after the copy of the order was served. In *Stowe* v. *Brookfield*, 26 Vt. 524, a copy of the order certified by the justices was delivered by a citizen of Stowe to the overseer of Brookfield, within thirty days after the date of the order, and no removal was ever made or appeal taken, and the court held the order binding on the town of Brookfield. In none of these cases does it appear that any reason was shown why a removal was not made when the order was served or copy left. This shows that the right and

Poultney *v.* Sandgate.

requirement to serve the order on the adverse town before making the removal, is not confined to cases where the pauper was sick or imprisoned. The actual removal of the pauper, therefore, under the order of 1854, is not necessary to its binding force.

2. The next question is whether the manner in which the service was made in this case is such as the statute requires.

Until the act of 1850 was passed, there was no mode of serving the order by sheriff or constable, by process directed to him to serve, except when actual removal was made, but the copy of the order was delivered by some private individual, and such delivery was proved by parol as any other fact in the case. But the act of 1850, (Comp. Stat. p. 132, §§ 13 and 14,) provides that the justices may certify a copy of the order, and append a notice, the form of which is given, directed to a sheriff or constable, and provides that it may be served by the sheriff of the county in which either town is situated, or a constable of either of said towns, as writs of summons are required to be served. This act only provides an additional mode of service. This order was served in the manner provided by this act as heretofore stated. But the parol proof shows that in fact the overseer never got actual notice until recently, and not in season to appeal, by reason of the person with whom the copy was left not delivering him the copy, although the court find she was a person of sufficient discretion. This want of actual notice must be regarded as the misfortune of the town on which the service was made. It can not be interposed to defeat the legal effect of the order and service, especially as it appears that the officer in good faith has done his duty, and fully complied with the statute. The proceedings can no more be attacked in this collateral way than could a judgment recovered under such a service of a writ of summons, had a similar accident occurred to the defendant.

3. It is further objected that the service of the order could not be legally made until the day arrived, fixed by the order for the pauper to remove. It is true that the pauper can not be removed before that time, but the order may be served immediately without reference to that, as we have already seen that the service of the order may be a separate proceeding.

4. The defendants object also that the order itself is invalid,

and we are referred to the original papers put into the case as before stated. It will be noticed that the bill of exceptions does not state that the original order was put in; it states that the plaintiff put in the original complaint and warrant. Upon that is this entry:—"July 11, 1854, considered by the court that the within named Rebecca Williams and her children, Charles, Frances, and Egbert, be removed from the town of Poultney on or before the 1st day of August next." If no other order than this was made, it probably would be held invalid. It does not state to what town the pauper was ordered to be removed, nor is there any finding that her legal settlement is in Sandgate, nor that she is chargeable, or liable to become chargeable, to the town of Poultney. To be valid, it must find all that the statute requires to justify the removal. But from the whole proof we can not intend that this is the only record of the order; it must be regarded as a mere memorandum from which the order was ultimately made. The legitimate evidence is a certified copy of the order, and this the plaintiff did introduce, and it contains all that the statute requires, and is in due form. This is sufficient proof that there was an original, of which that is a copy. This defective order or memorandum is not shown by the exceptions to have been put in as the original order, it appears upon what the exceptions show the defendant put in as the original complaint and warrant and return. The copy of the order must be regarded as proof of an original of which that is a copy and which is perfect.

The order of removal in 1854 being valid, and the service thereof on Sandgate being regularly made, and no appeal being taken, that proceeding is conclusive of the settlement of the pauper in Sandgate at the date of that order. This is fully settled by the decisions above referred to, as well as others that might be cited. The case of *Stowe* v. *Brookfield* is directly in point. In that case the order was made and served, and no removal ever made under it, and no reason shown for not making the removal. The pauper at the time the second order was made, and which was appealed from, had resided seven years in Stowe continuously, and supported himself, but during the period of this residence the first order was made and served.

The court held that the order was conclusive evidence that at the date of the order the settlement of the pauper was in Brookfield, and that the term of residence prior to the first order could not be added to the residence between the first order and the one that was appealed from to give a settlement in Stowe. This covers the whole ground of the present case.

5. But the defendants' counsel claims that, upon the facts stated in the exceptions, the marriage of Rebecca, the pauper, to Williams, in 1844, was invalid, and that therefore her marriage to Kenyon in 1846, by whom she had the children named in this order, and with whom she was living at the time the order was made in 1854, was valid, and therefore the justices had no power to make that order, even if her settlement was in Sandgate, for the reason that she could not be separated by a removal under it from her husband. But the answer to this objection is that if these facts constituted a valid objection to the making of the order of 1854, the adjudication of the justices is as conclusive against these facts as of the settlement, or of any other facts which the justices must have found to warrant the making of the order, as the adjudication is conclusive of every fact necessary to uphold it, and if on the other hand these facts constitute no objection to the making of the order, but only suspended the right to make an actual removal under it, still the order is concluaive of the settlement in Sandgate, which is the only issue presented by the pleadings in this case, and these facts in this view are immaterial. These facts can not be urged either against the order in 1859, from which this appeal was taken, or against the removal under it, as the only issue presented by the pleadings is upon the question of settlement of the pauper in Sandgate.

This conclusion on this branch of the case renders it unnecessary to pass upon the various points arising upon the evidence upon the question whether, independently of the order of 1854, the legal settlement of the pauper was in Sandgate at the date of this order made in 1859, as the order of 1854 precludes the town of Sandgate from entering into that inquiry, unless proof of facts which show a change of settlement since the order of 1854.

The judgment of the county court is affirmed.