## TOWN OF PITTSFORD v. TOWN OF CHITTENDEN.

*Illegitimacy. Evidence. Non-Access of Husband. Pauper. Bastard Child's Settlement. Mother's Settlement. Former Recovery.* R. L. s. 281.

1. The illegitimacy of a child born of a married woman may be established by evidence, in effect, that her husband had utterly abandoned her, that he removed to a distant part of the country, and had no opportunity of access to her during the four years next preceding the birth of the child.

2. The establishment of the settlement of an illegitimate child by order of removal unappealed from, establishes, and necessarily determines, the settlement of the child's mother, in a subsequent proceeding. The first adjudication involved the essential fact of the second, and is therefore conclusive.

APPEAL from an order of removal of a pauper. Heard on an agreed statement, September Term, 1885, VEAZEY, J., presiding.

Judgment that the pauper was duly removed. The pauper's child, Warner, was removed from the plaintiff town to the defendant town.

*Lawrence & Meldon* and *P. R. Kendall,* for the defendant.

The record of the removal of the child is not conclusive. To be so, it must appear (1) that it is the same subject matter; (2) that it is between the same parties; (3) that the fact relied upon was put distinctly in issue in the former case and found by the triers; (4) *that this appears from the record. Gray* v. *Pingry,* 17 Vt. 425.

"If from the record (when the record alone as in this case is relied upon) it should appear *possible* that the question was left undecided, then there would be no estoppel; for an estoppel, in the language of Lord Coke, must be certain to every intent." *Aiken* v. *Peck,* 22 Vt. 260.

The effect claimed for this judgment, that it is conclusive as to the legal settlement of the mother, proves too much and seems preposterous. If it conclude the legal settlement of the mother, by parity of reasoning it would conclude the legal settlement of the father, and if derived from the grandfather, the whole line, ascending and descending, direct and collateral. It has never before been claimed that parents derive their settlement from their children.

"The decree, judgment, or sentence, must be direct, upon the precise point, and is not evidence of any matter, which came *collaterally* in question, although it was within the jurisdiction of the court, nor of any matter *incidentally* cognizable, nor of any matter *to be inferred by argument from the judgment,* as having constituted one of the grounds of that judgment." 1 Stark. Ev. 264, 365; 94 U. S. 199; *Russell* v. *Place,* 94 U. S. 216; *Aiken* v. *Peck,* 22 Vt. 260; *Hooker* v. *Hubbard,* 102 Mass. 245; *Davenport* v. *Hubbard,* 46 Vt. 200. Freem. Judg. s. 253.

It would seem this record does not show that it was ad-

judicated in what manner this pauper took his settlement. It is all matter of inference. And it is as properly inferable as anything else that the town thought it less expensive to support the child for a while than to litigate the question of his legal settlement.

*Chas. S. Colburn, A. F. Walker,* and *F. G. Swinington,* for the plaintiff.

The order of 1872, which was not appealed from, is conclusive as to the settlement of the pauper, Bridget. *Poultney* v. *Sandgate,* 35 Vt. 146; *Cabot* v. *Washington,* 41 Vt. 168; Rob. Dig. p. 517.

The settlement of Bridget, who, it is admitted, was the mother of the illegitimate minor child against whom said order was directed, was the one essential fact necessary to uphold it. Gen. St. c. 19, s. 1.

If any doubt can be raised upon the record respecting the illegitimacy of the child, Warren Green, the result is not changed. If the settlement of Warren Green, adjudicated in 1872, can be conceived as derived from Seymour Jackson, the mother's settlement was necessarily identical. Gen. St. c. 19, s. 1, sub. 1 and 2.

However, Seymour Jackson having deserted his wife, Bridget, twelve years before the adjudication upon the settlement of Warren Green, he could not possibly be recognized as the head of the family at that time. *Bethel* v. *Tunbridge,* 13 Vt. 445.

And therefore the settlement of Bridget was necessarily the only question upon which the adjudication of 1872 was based.

The opinion of the court was delivered by

WALKER, J. The agreed statement of facts upon which the case was tried, states that the pauper, whose maiden name was Bridget Keough, was married August 29, 1857, to Seymour Jackson, who deserted her, and moved to Califor-

nia in 1860, where he has since remained so far as known; that in 1864 a child was born to said pauper, Bridget, known as Warner Jackson, or Warner Green, who was removed to the town of Chittenden, as a pauper, on an order of removal made in 1872, when said child was about eight years old.

The words "deserted her," as used in the statement of facts, are to be read in their ordinary legal sense, and, when so read, mean that said Seymour Jackson utterly forsook and abandoned the pauper, and quit and left her with a view of not returning to her. To the more effectually accomplish his purpose he immediately removed to a far distant part of the country, and has remained there since. He clearly had no opportunity of access to the pauper after his desertion of her in 1860, and could not have been the father of the child born of her in 1864, known as Warner Jackson or Warner Green.

In *Rex* v. *Maidstone*, 12 East, 550, it was held that, in a case where the husband was gone beyond the seas for two years next before the birth of a child borne by his wife, she remaining at home, the conclusion was irresistible that the child was a bastard. Also in *The Barony of Saye and Sele*, 1 H. L. Cas. 507, it was held that the illegitimacy of a child born of a married woman is established by evidence of her husband's residing in another part of the kingdom during the time the child must have been begotten, as access was impossible. And in *Patterson* v. *Gaines*, 6 How. U. S. 550, it was held that the legitimacy of the issue born of a married woman may be impugned by facts showing it to be impossible for the husband to be the father.

We think the fair reading and intendment of the statement of facts is, that the child born of the pauper in 1864, known as Warner Jackson, or Warner Green, was her illegitimate son.

The General Statutes, which were in force from 1863 to

the adoption of the Revised Laws in 1880, provided, that " Illegitimate children shall follow and have the settlement of their mother; but neither legitimate nor illegitimate children shall gain a settlement by birth in the place where they are born, if neither of their parents then have a settlement therein."

The child Warner was duly removed to the town of Chittenden as a pauper by virtue of the order of removal made by the justices in 1872, and no appeal was taken against said order. No question is made as to the legal sufficiency of this order of removal, in every respect, to establish the settlement of said Warner in Chittenden until he should have gained or acquired another in some of the ways provided by statute.

In this appeal from the order of removal of Bridget Jackson, *alias* Keough, the mother of said Warner, from the town of Pittsford to the town of Chittenden, it is claimed by the plaintiff town that the order of removal of the child in 1872, which established the settlement of the child, is conclusive as to the settlement of his said mother; because, first, said order is conclusive as to all facts necessary to uphold it; second, that the settlement of the mother of said child against whom said order was directed was the one essential fact necessary to uphold it.

It is not claimed that the pauper has acquired or gained a settlement in any town since 1872; nor that she has a settlement in any town in the State, acquired under the statute, from her husband.

The child, at the time of the order in 1872, had gained no settlement, by birth or otherwise, in his own right; he followed and had the settlement of his mother. To determine his settlement it became necessary for the justices to ascertain the settlement of the mother. This was the one essential fact to be found on the inquiry. The adjudication rested upon this pivotal fact. It was absolutely impossible to establish the settlement of the child without first ascer-

taining the settlement of the mother; they were inseparable; the one logically followed the other. And the order of removal of the child could be upheld only upon an adjudication of the settlement of the mother.

In *Poultney* v. *Sandgate*, 35 Vt. 146, which was an appeal from an order of removal made in 1859 of a pauper who had previously been removed upon an order made in 1854, unappealed from, it was objected that upon the facts existing in 1854 the justices had not the power to make the order which they then made. But Judge PECK, in answering this objection, in the opinion of the court, says: "That if these facts constituted a valid objection to the making of the order of 1854, the adjudication of the justices is as conclusive against these facts as of the settlement, or of any other facts which the justices must have found to warrant them in making the order, as the adjudication is conclusive of every fact necessary to uphold it."

There is no proposition in the law of settlements more clear than that an order of removal unappealed from is conclusive, as to all the world, not only of the settlement of the pauper removed, but also of all facts and steps necessarily involved in the adjudication. This doctrine is elementary, 3 Stark Ev. 1005. It is supported by numerous American and English cases. In *Rex* v. *St. Mary Lambeth*, 6 T. R. 615, the court decided that an order of removal, unappealed against, is conclusive, not only as to the parties removed, but also as to all derivative settlements; and, therefore, if A and B be removed, as husband and wife, from X to Y, and there be no appeal from the order, it is conclusive not only as to the settlement of A and B, though they are not married, but also as to their children, though illegitimate. In *Rex* v. *The Inhabitants of Rudgeley*, 8 T. R. 620, it was held that where a *feme covert* was removed by an order of two justices describing her as a widow, and no appeal was taken against it, it was conclusive not only as to her settlement, but as to that of her husband, if living,

for, being removed as a widow, the presumption is that she was removed to the place where her husband was settled. In *Rex* v. *Towcester*, 4 Dougl. 240; S. C. 26 E. C. L. 450, a married woman was removed, and the order of removal, not being appealed from, was held conclusive of the husband's settlement, although it was not stated in the order that she was his wife. In *Rex* v. *Hinxworth*, Cald. 42, the same principle was held where the order described the woman removed as the wife of the pauper whose settlement afterwards came in question.

The principle upon which these cases rests, is that a matter once examined and necessarily decided by a competent tribunal shall not be re-agitated and in effect shown to have been decided erroneously upon new evidence which might have been, but was not, produced upon the former hearing. Some attempts have been made to impeach the conclusiveness of the effect of a former order of removal, unappealed from, but thus far without success. Whatever has been necessarily decided upon the facts existing at the time of the making of an order of removal must stand unimpeached.

The case of *Reg.* v. *Hartington Middle Quarter*, 4 Èl. & Bl. 780, is analogous to the case at bar and practically decisive of it. In that case two pauper children of tender age were removed from Levenshulme to Hartington Middle Quarter, by an order of two justices, made in 1849, which described them as the lawful children of William Gould and Esther Gould. They were at the time unemancipated, and were adjudged to be settled in Hartington in right of their father's settlement therein; but this fact did not appear in the order. This order was never appealed from, though William Gould, the father, was not settled in Hartington, as supposed. Afterwards Esther, the wife of William Gould, was received into an asylum, being sent there from Levenshulme as a pauper lunatic. In March, 1854, two justices adjudicated that Esther's settlement was in Hart-

ington, and made an order accordingly. This order was appealed from; and on the appeal the question was, whether Hartington was or was not concluded by the order on which the children were removed in 1849. The Court of Queen's Bench, COLERIDGE, Judge, giving the opinion, held that the order of 1849 was conclusive against Hartington not only as to the settlement of the two children expressly removed by it, but as to the settlement of their mother, Esther Gould. Here the last order was clearly not an adjudication on a settlement derived from the children, but it depended on the same two facts on which the children's depended, and which must have been decided by the justices when they determined the settlement of the children, namely; the settlement of William Gould, and his marriage with Esther, the pauper.

So in the case at bar, the order of removal of the mother was not an adjudication on a settlement derived from her son, but one dependent on the same facts on which the son's depended and which must have been found by the justices when they determined the son's settlement, namely; his maternity and his illegitimacy. The child must have been held to be settled in Chittenden on a judicial finding that the legal settlement of the mother was in that town, and that he was her illegitimate son; and in this proceeding for her removal her settlement must be taken to be there also on the finding of the same facts, there being no evidence of a subsequently acquired settlement, nor of her husband having a settlement in any other town in the State.

The facts which are controlling in the present proceeding for the removal of Bridget cannot now be disputed without declaring that the decision upon them in the former case was erroneous. But this the town of Chittenden cannot now do. They neglected to take their appeal from the first order, and the time has gone by for them to have the adjudication of the justices therein corrected, if it was erroneous.

They cannot show by new evidence that the justices were misled as to the facts, nor that they made a wrong application of the law. A judgment which is founded upon facts which are controlling and essential to uphold it, and which will not stand without them, cannot be impeached when these facts are again in question between the same parties, and they must be considered as having been conclusively determined; and especially so, in a settlement case against the town in which a former judgment has determined and fixed a settlement.

The cardinal facts upon which the adjudication of 1872 was made were not collateral to the decision then made, but were the ground-work of it, though not directly the point at issue. The question then was, where the minor child was settled. It was answered by showing that he was the illegitimate son of Bridget Jackson, and that she was settled in Chittenden.

With either of these facts left out there was no ground-work for the decision. They were the necessary facts and steps to the determination then made; they were the foundation of that adjudication; with them left out, the order cannot be upheld. The judgment in the former case and this must rest upon the same foundation which has been settled in the first, and cannot be unsettled in the latter without showing a newly acquired settlement by the mother.

Upon the authority of the cases cited above, the order of 1872, unappealed from, must be held as conclusive not merely of the fact therein directly in issue and decided, but of all other facts necessary to the decision reached. The settlement of the mother in that adjudication was not a collateral fact, but a necessary step to the decision made; and we think the town of Chittenden is concluded by it in the present proceeding when the same fact comes again in issue as the basis of the adjudication.

The same result is reached if the child is regarded as the legitimate child of Seymour and Bridget Jackson. In that

case, the essential fact necessary to uphold the order would be the settlement of Seymour Jackson, if he had one in the State, as the settlement of the wife and child followed that of the husband and father, if he had one in the State. And Seymour Jackson's settlement having been decided to be in Chittenden as a basis of the son's settlement therein in a former order of removal, that adjudication cannot be impeached in this proceeding where his settlement becomes the basis of his wife's settlement.

And again, if Seymour Jackson had no settlement in the State, then his wife's settlement was not lost or suspended by the marriage, and their child followed and had the settlement of the mother. So in that case, the mother's settlement necessarily became the basis of the adjudication of 1872; and having been established in Chittenden by that proceeding it cannot be impeached in this.

Judgment affirmed.