## In re SEAVEY.

(District Court, S. D. New York.  January, 1912.)

JUDGMENT (§ 828*)—PROCEEDINGS IN STATE COURT—CONCLUSIVENESS.

Where a bankrupt's trustee instituted proceedings in a state court to set aside as fraudulent an assignment of an alleged interest in certain property under the will of her grandfather, and to establish his right thereto as trustee, and the bankrupt duly defended such action, in which the trustee was successful, the judgment, in the absence of an appeal therefrom, was conclusive, and could not be collaterally attacked or reviewed for error in the bankruptcy proceeding.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

In the matter of bankruptcy proceedings of one Seavey.  On petition to review a referee's order refusing to stay a sale of an interest of the bankrupt in the estate of her grandfather, William H. Clement. Petition dismissed, and stay vacated.

The following is the opinion of Townsend, Referee:

The trustee is advertising for sale, by the official auctioneer, assets of the above-named bankrupt consisting of all of the interest of the said bankrupt in the estate of William H. Clement, deceased, under the will of said William H. Clement, deceased, dated the 24th day of November, 1886, and thereafter and heretofore admitted to probate by the probate court of Warren county, Ohio.

The bankrupt obtained from the referee an order to show cause dated November 27, 1911, requiring the trustee to show cause why he should not be stayed from such sale until the final determination of the question as to whether or not at the time of the filing of the petition in bankruptcy the bankrupt had a vested, contingent, or alienable interest in the estate of William H. Clement, deceased, or any interest that would vest in the trustee or be reached by judicial process, and until it should be determined whether or not the bankrupt should be discharged.  The bankrupt was adjudicated such on her own petition filed April 18, 1911.  The only creditor scheduled is the Adirondack Trust Company of Saratoga Springs, N. Y.  The note is scheduled as "accommodation paper."  It is described as being dated December 26, 1910, and to have been made by the bankrupt and her brother, Henry S. Clement, Jr., and indorsed by James A. Seavey, the bankrupt's husband.  The amount of the note is $10,000, with interest from March 26, 1910.  At an adjourned meeting of creditors on June 15, 1911, Charles W. Clowe was appointed trustee in bankruptcy.

By summons dated June 23, 1911, the trustee in bankruptcy began an action in the Supreme Court of the state of New York, Saratoga county, against the bankrupt and other defendants which has been tried before Mr. Justice Kellogg of that court.  Under the objection of the bankrupt, the judgment roll in that action is before me, which was entered in the office of the clerk of Saratoga county November 20, 1911.

The judgment roll entered November 20, 1911, in the action in the Supreme Court, Saratoga county, in which Edgar T. Brackett is plaintiff, and the bankrupt et al. are defendants, I do not regard as material here.  The trustee's action was begun by him under section 70e of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]).  The complaint prays a judgment setting aside an instrument executed by the bankrupt November 19, 1908, to her mother-in-law, Mary E. Seavey, and declaring

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the "property and assets" referred to in the instrument belong to the trustee in bankruptcy, and were subject to administration in the bankruptcy court. A copy of the instrument is attached to the complaint. The instrument/purports to convey to the mother-in-law all the assignor's interest of whatever nature in the estate of William H. Clement under the will of William H. Clement. After trial, the justice signed findings of fact and conclusions of law dated November 18, 1911. The judge finds as a matter of fact the ownership by the Adirondack Trust Company of a renewal note for $10,-000, made by the bankrupt and her brother, falling due March 26, 1911, the will of the bankrupt's grandfather, William H. Clement, hereafter referred to, that the trust fund created by that will in favor of the testator's son, Henry S. Clement, the father of the bankrupt, consisted partly of real estate in the village of Saratoga Springs, and partly of securities in this state, and the making by the bankrupt on November 19, 1908, of a conveyance in favor of her mother-in-law.

The first conclusion of law is that the conveyance was and is void as against the trustee in bankruptcy and the creditors represented by him. The second conclusion of law is that the interest of the assignor in the estate of her grandfather (William H. Clement) at the time of the conveyance "was and is property and was and is assignable." The third and fourth conclusions of law are not here material. As stated, judgment was entered in conformity with the findings of fact and the conclusions of law.

The bankrupt's grandfather, William H. Clement, died in 1887, leaving a will dated November 27, 1886. The bankrupt's father, Henry S. Clement, still alive, is a son of William H. Clement. The wife of Henry S. Clement died in January, 1911. The bankrupt and her brother, Henry S. Clement, Jr., are the only children of Henry S. Clement. The bankrupt has only one child, Arthur Clement Seavey. Those parts of the will of William H. Clement here material are set out in the second finding of fact made by Mr. Justice Kellogg in the action referred to. After establishing a trust for the sole use and benefit of the testator's son, Henry S. Clement, and his wife, Julia Y. Clement, during their natural lives or during the lifetime of the survivor, item 8 of the will provides as follows: "In the event of the death of my said son, and the remarriage of his said wife, should she survive him, I desire and direct my said trustees, John B. Clement and John Cox to pay to my said grandchildren, lawful children of my son, Henry S. Clement, or their descendants, all the estate hereby devised to my son, Henry S. Clement, and his children as aforesaid, herein expressed." Item 11 provides as follows: "That is to say, after paying all the special bequests and devises, as heretofore stated, the remainder of my estate, real, personal and mixed, shall be divided into four equal parts, and disposed of in the manner and form herein provided and directed. And I further direct and desire that in the event of the death of any of my said children, Henry S., John B., Florence P. Clement, or Caroline W. Stoledo, before my decease, leaving no lawful lineal descendants, that in that event, the portion of my said estate, and each and every part thereof herein devised or bequeathed to such child or children, dying without lawful issue, before me, shall pass to, and vest in equal parts in my said own children living at the time of my decease, and the lawful issue of any of my deceased children, and the lawful children of their children, shall take and receive the portion of its deceased parent in the manner provided in this, my last will and testament."

Judge Kellogg's opinion (pages 3 and 4), after remarking that the provisions of the will are very clumsily drawn, holds that it was the testator's intent as evinced by the context of the will that the trust should exist during the joint lives of Henry S. Clement and his wife, unless shortened by the remarriage of the latter, and that, upon the termination of the trust, the property should be delivered to the descendants of Henry S. Clement, of whom the bankrupt is a daughter. Judge Kellogg's construction of the will would be my own independent construction. Judge Kellogg's opinion (page 5) also holds that it is unnecessary to determine whether the interest of the bankrupt as a daughter of Henry S. Clement under the provisions of the will was a vested or a contingent remainder, for the reason that whether the remainder was vested or contingent the interest was "plainly assignable," and therefore

a proper subject-matter for the trustee's action. As setting at rest the question, the judge cites the late case of National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed by the Court of Appeals upon the opinion of Miller, J., below.

The trustee's action as stated was brought under section 70 of the Bankruptcy Act. That section is entitled "Title to Property," and provides that the trustee shall be vested by operation of law with the title of the bankrupt, as of the date of adjudication, to all (4) property transferred by him in fraud of creditors, and (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process.

The Billings Case was decided by the Appellate Division in the First Department in May, 1911, and is to be found in 144 App. Div., and 129 N. Y. Supp. Its affirmance will be found in 203 N. Y. 556, 96 N. E. 1122. The action was brought by the bank under section 1871 of the Code of Civil Procedure. This section provides that a judgment creditor may maintain an action against a judgment debtor, after return of an execution wholly or partly unsatisfied, to compel discovery of anything in action or "other property" due to him, and to procure the satisfaction of the plaintiff's demand as prescribed in section 1873.

Two questions were before the Appellate Division, to wit: Whether the judgment had been properly granted on the pleadings, and whether the defendant, Henry Billings, had such an interest under the will of his father, Chester Billings, as could be reached by a judgment creditor under section 1871 of the Code of Civil Procedure and was "property" within the meaning of that section. 144 App. Div. 540, 129 N. Y. Supp. 849. Two of the judges concurred in the opinion of Judge Miller that the judgment had properly been granted on the pleadings and also that the interest of Henry Billings was "property" within the meaning of section 1871 of the Code of Civil Procedure.

Judge Miller's conclusion (which was adopted by the Court of Appeals in its recent decision handed down October 24, 1911), that the interest of Henry Billings was property that could be reached within section 1871 of the Code, seems to have been reached on the broad ground that the future interest of Henry Billings in the personal property constituting the principal of the trust, whether vested in him or not during the lifetime of his mother, was a property interest which he could assign, which would pass to a trustee in bankruptcy, and which could be reached in such an action as was before the court. 144 App. Div. 541, 545, 129 N. Y. Supp. 850, 852.

Judge Scott, dissenting (144 App. Div. 545, 129 N. Y. Supp. 853), concurred with Judge Miller as to the question of practice, but held (144 App. Div. 549, 129 N. Y. Supp. 855) that the interest of Henry Billings was not to be reached under section 1871 of the Code of Civil Procedure, for the reason stated by him (144 App. Div. 547, 549, 129 N. Y. Supp. 854, 855). In substance, Judge Scott's view was that Henry Billings' interest, although he might so sell it as to estop himself from claiming it in the future, was a mere speculative possibility or chance, with nothing vesting in him, and therefore not "property."

Judge McLaughlin (144 App. Div. 550, 129 N. Y. Supp. 856) dissented from the majority of the court on the question of practice, and did not consider the question of the interest of the defendant, Henry Billings.

The provisions of the will of Chester Billings appear in full in Judge Scott's opinion, at page 546 of 144 App. Div., page 853 of 129 N. Y. Supp. The will established a trust, constituted of personal property, for the benefit of the widow with a direction to the trustees to pay over one-half of the corpus to the testator's son Henry on the death of the widow or as soon thereafter as Henry should attain the age of 25 years. Apparently at the date of the action the widow was still alive.

The contention of the bankrupt here is that the setting aside by the judgment of the Supreme Court of the transfer or assignment made by her in November, 1908, is immaterial for the reason that neither in 1908 nor at the date of her adjudication did she have any vested interest in the estate of her grandfather, William H. Clement, which, if it had not been assigned,

would have vested by operation of law under section 70 of the Bankruptcy Act in her trustee in bankruptcy. In other words, I understand the bankrupt's contention to be exactly that stated, in the opinion of Judge Scott in the Billings Case.

It is the further contention of the bankrupt that the judgment of the Supreme Court of the state of New York before referred to is not binding upon this court on the question involved as to the character or assignability of the bankrupt's interest under her grandfather's will. It is claimed that the purpose of the action brought by the trustee was to set aside the assignment made in November, 1908, as fraudulent as against creditors, and that it was not necessary that the court should decide the character or extent of the interest of Elizabeth Seavey under her grandfather's will which the assignment purported to assign, but that the latter question is one arising solely in this court charged with the administration of the bankrupt's estate under the Bankruptcy Act.

In support of the contention that at the date of her adjudication in bankruptcy, April 18, 1911, the bankrupt had no such interest under the will of her grandfather as would vest in her trustee in bankruptcy under section 70 of the Bankruptcy Act, the brief of her counsel cites the following decisions, several of which are decisions in this district:

In re Gardner (D. C., N. Y.) 5 Am. Bankr. Rep. 432, 106 Fed. 670. Here an application was made to restrain the trustee from offering for sale the alleged interest of the bankrupt in certain real estate in Brooklyn. Judge Addison Brown granted a stay. The opinion is brief and cites In re Hoadley, infra. The bankrupt was the son of one of the two daughters of the testator. The provisions of the will devised all the testator's real estate to the two daughters during their joint lives, and provided that upon the death of the last daughter the real estate should be sold and the proceeds divided equally "among my grandchildren, the issue of any deceased grandchild to take the parent's share." Judge Brown holds that there was only a contingent future gift and that of money, and that the gift was not to any individual named but to the members of a class only, to be determined in the future, and that no present interest vested in the bankrupt that could be alienable or sold under execution.

In re Hoadley (D. C., N. Y.) 3 Am. Bankr. Rep. 780, 101 Fed. 233. This is also a decision by Judge Addison Brown. The trustee applied for an order against the bankrupts, Hoadley and Monroe, to transfer to him their interests in certain estates devised under certain wills. The bankrupts contended that under those wills they took no interests upon which the provisions of section 70 of the Bankruptcy Act could operate. The case was before Judge Brown upon an elaborate opinion by Referee Ernest Hall sustaining the bankrupts' contention. Judge Brown states (3 Am. Bankr. Rep. 785, 101 Fed. 237) that he concurs with the referee "after considerable examination and no little doubt." The Hoadley will directed the residue of the testator's estate, real and personal, to be converted into money and to be held in trust for the benefit of his wife during her life and upon her decease to be divided by the trustee into as many shares as he should have children then living, the issue of any deceased child to take the parent's share, and the testator expressly devised one share to each child surviving his wife. The bankrupt Hoadley was a child of the testator. The Clark will directed that, after the decease of the testator's daughter Emily, his estate should be converted into money and be divided into as many shares as he should have children then living, each such child to take an equal share, the issue of any deceased child to take the parent's share. The bankrupt Monroe was a son of a deceased daughter of the testator. The daughter Emily was alive at the date of the adjudication. The will of the mother of the bankrupt Monroe provided that all her real and personal estate, after the death of her husband, should be divided equally among her children then living. As stated, Referee Hall held that neither bankrupt took any property under these wills which could be reached for the payment of their debts or which could be taken by the trustee, and the referee's conclusion was affirmed by Judge Brown. The proposition held in the Billings Case, supra, that the possibility of survivorship was property which the bankrupt might have transferred, although he had no vested

or present interest, was not discussed in the Hoadley Case. Judge Brown pertinently remarks (3 Am. Bankr. Rep. 787, 101 Fed. 238), apropos of the confusing discussion disclosed in the decisions, that the explanation of the discrepancies in the decisions on the subject is to be found in the effort to adopt in each case a construction of the will which will most nearly carry out the apparent intent of the testator.

In Re Wetmore (D. C., Pa.) 4 Am. Bankr. Rep. 335, 102 Fed. 290, affirmed (C. C. A., 3d Cir.) 6 Am. Bankr. Rep. 210, 108 Fed. 520, 47 C. C. A. 477, the district judge denied a petition by the trustee asking for an order directing the bankrupt to pay over cash and securities in his possession, he claiming them under his father's will, on the death of his mother which happened in March, 1899, he having been adjudicated a bankrupt in January, 1899. The will of the father bequeathed $100,000 in trust to apply the income to the widow during her life. The testator gave the widow an unqualified power of appointment to dispose of the principal, and, in default of the exercise of the power, he gave the trust fund upon the death of the widow to his then surviving next of kin. The bankrupt was and had been an only son. The district judge held that at the date of the adjudication there were two contingencies, to wit, that the son might not live to be the next of kin surviving at the death of the widow, and that in her lifetime the power of appointment might have been exercised in favor of some other party by the widow. The judge is clear at page 337 of 4 Am. Bankr. Rep., at page 291 of 102 Fed., that the bankrupt's interest was not such at the date of his adjudication as was capable of being transferred at law. The district judge recognizes at the same time that an assignment of the interest for a valuable consideration might be enforced in equity against the son.

The opinion of the C. C. A. shows that the case arose under the law of the state of New York. The opinion of the C. C. A. is in line with the dissenting opinion of Mr. Justice Scott in the Billings Case. It holds (6 Am. Bankr. Rep. 215, 108 Fed. 525, 47 C. C. A. 480) that the bankrupt had merely an expectation of an estate, that there was nothing in him to pass to the trustee, and that this does not constitute property or title to property (6 Am. Bankr. Rep. 214, 108 Fed. 523, 47 C. C. A. 480), and that it cannot be transferred or levied upon. It holds (6 Am. Bankr. Rep. 213, 108 Fed. 523, 47 C. C. A. 480), that it is not material that the bankrupt might for a valuable consideration prior to the filing of the petition, by contract in the form of an assignment or by executory contract, have barred or precluded himself from enjoying the exclusive benefit of the fund. It also holds (6 Am. Bankr. Rep. 213, 108 Fed. 523, 47 C. C. A. 480), that the trustee has no claim to the fund unless the bankrupt has some title to it at the date of the adjudication, and the language of section 70 of the Bankruptcy Act is quoted.

In re Ehle (D. C., Vt.) 6 Am. Bankr. Rep. 476, 109 Fed. 625. This case was a petition by the trustee for leave to sell an expectancy of the bankrupt in the estate of his grandfather, George Robinson, being the son of Frances Ehle, one of the two daughters of the testator. By the testator's will he directed that after the decease of both his daughters and as his grandson, George Ehle, should reach the age of 25, there should be given and paid to him two-fifths of the trust. Both of the testator's daughters were living, and the bankrupt, George Ehle, was past 25 years at the date of adjudication. The judge (6 Am. Bankr. Rep. 478, 109 Fed. 626), holds that the bankrupt at the date of adjudication had not yet and might never have any vested interest, and that the contingency was personal to the bankrupt as to whether he should ever take at all under the will. He follows Judge Brown's decision in Re Wood (D. C., N. Y.) 3 Am. Bankr. Rep. 572, 98 Fed. 972, and in Re Hoadley (D. C., N. Y.) 3 Am. Bankr. Rep. 780, 101 Fed. 233, as well as in Re Gardner (D. C., N. Y.) 5 Am. Bankr. Rep. 432, 106 Fed. 670. The trustee's petition was dismissed. It may be stated that the case of In re Wood arose on objections to the discharge of the bankrupt, Joseph Wood, who was held by Referee Holt to have a vested remainder in the estate of his father, he being named in the will as the person to take after the death of the widow.

In re Twaddell (D. C., Del.) 6 Am. Bankr. Rep. 539, 110 Fed. 145. The bankrupt was one of the 12 grandchildren surviving their grandfather, Horter. The testator's will (6 Am. Bankr. Rep. 540, 110 Fed. 146) bequeathed unto his

daughter, the bankrupt's mother, certain real estate in Pennsylvania during the term of her natural life, and at the time of her decease to her "surviving" children equally. The judge held that the word "surviving" referred to the death of the testator, Horter, and that thus the bankrupt acquired a vested remainder in fee, though liable to open and let in after-born children, and that consequently the bankrupt had at and prior to the date of the adjudication an interest which would pass to the trustee under section 70a (5) of the Bankruptcy Act. At the same time the judge held (6 Am. Bankr. Rep. 540, 110 Fed. 146) that it was essential to any right on the part of the trustee that the bankrupt should have had at the date of the adjudication a claim or interest of some kind, vested or contingent, and that the mere ability possessed by one who subsequently becomes a bankrupt by deed or assignment to estop or preclude himself from claiming title to or enjoying property wholly acquired after the execution of such deed is not sufficient to constitute property within the meaning of the language used in section 70a (5) of the Bankruptcy Act.

In re McCrea (C. C. A., 2d Cir.) 20 Am. Bankr. Rep. 412, 161 Fed. 246, 88 C. C. A. 282, 20 L. R. A. (N. S.) 246. This case arose on specifications of objections to the discharge of the bankrupt; one objection being a false oath knowingly made in withholding from the bankrupt's schedules his interest in his father's estate. The real estate described in the will was in New York. The testator was the father of the bankrupt. The will provided that, upon the death of the widow (yet alive), the principal of the estate should be divided among the children then living and the issue of deceased children. The question now before me does not seem to have arisen squarely in that case, for the court held (20 Am. Bankr. Rep. 415, 161 Fed. 248, 88 C. C. A. 284, 20 L. R. A. [N. S.] 246) that the involved character of the question, under the facts and circumstances of that case, absolved the bankrupt from the charge of having knowingly and fraudulently made a false oath and overruled the objection on that ground.

Van Heusen v. Van Heusen Charles Co., 131 N. Y. Supp. 401. Plaintiff, John Van Heusen, sued as owner of an undivided interest in the real estate of his father who had left a third of his estate in trust for the benefit of his widow (still living), which was to go to her children, who might be living at her death (page 402). In April, 1907, the plaintiff had filed a petition in bankruptcy, and was subsequently discharged. Prior to his petition he had assigned his interest in his father's estate to one Cone, who after his discharge reassigned it to him. Rudd, J., held that, even if the assignment had not been made, a fraud held to be available only to creditors, the plaintiff's interest was contingent and would not pass to the trustee in bankruptcy.

I do not understand that in these cases, so far as they arose in this district, the court undertook to apply or declare any other law than the law of the state of New York. I am also of the opinion that were it not for the Billings Case, supra, the above cases arising under the law of this state would entitle the bankrupt to the stay applied for by her against her trustee. The Billings Case seems to me, however, to be a recent declaration by the court of last resort of this state that such future interest or expectancy as that possessed by the bankrupt here under the will of her grandfather, whether it be deemed vested or not, is "property" within the meaning of section 70a (5) of the Bankruptcy Act, to be disposed of by the trustee by sale for the benefit of the bankrupt's creditors. National Park Bank v. Billings, 144 App. Div. at page 545, 129 N. Y. Supp. at page 852. As such the Billings Case seems to me to be controlling rather than the earlier decisions of this court which after all only purported to apply the law of this state as it then stood.

Another ground exists for the denial of the present application. The judgment referred to above in Clowe, as trustee, against Seavey, in res adjudicata between the trustee and the bankrupt as to all questions necessarily determined by the judgment in that action. The complaint shows that that action was brought by the trustee under the provisions of section 70a (4) of the Bankruptcy Act. It was necessary to the judgment recovered not only that the transfer of November, 1908, was in fraud of creditors, but also that it transferred "property" in fraud of creditors. The judgment of the Supreme Court has so found, and the bankrupt is bound by it. I refer to In re Skinner

(D. C., Iowa) 3 Am. Bankr. Rep. 163, 165, 97 Fed. 190. And see, also, the implication in Re Cornell (D. C., N. Y.) 3 Am. Bankr. Rep. 172, 173, 97 Fed. 29. I also refer to In re McGurn (D. C., Nev.) 4 Am. Bankr. Rep. 459, 462, 102 Fed. 743, In re Baird 84 Cal. 95, 24 Pac. 167, and Kerrison, Assignee, v Stewart & Co., 93 U. S. 155, 162, 23 L. Ed. 843.

I am aware that the refusal of the stay may result, in the event that the bankrupt outlives her father, not only in the acquisition by her one creditor, viz., the Adirondack Trust Company, of an estate at a relatively small consideration, but also in a sacrifice by the bankrupt of the difference between the value of the estate and her indebtedness. This result, however, in no way affects the legal questions involved.

The application for a stay of the trustee's sale is denied, and an order to that effect may be entered. I will, however, continue a stay of the sale pending the review of the referee's order by the district judge, if a petition for review be filed with me on or before January 2, 1912. Any party desiring a review of the referee's order may take the above memorandum as the referee's certificate of the questions of law and fact under General Order 27 in Bankruptcy (89 Fed. xi, 32 C. C. A. xxvii).

Mr. Hemmens, for bankrupt.
Mr. Todd, for trustee.

HOUGH, District Judge. It is not thought necessary to discuss the law of wills or their interpretation in order to arrive at decision herein. It is very seldom that I (so to speak) cut across the argument of counsel, and base decision upon some matter not pressed and perhaps not presented in briefs. But in this case, after carefully reading the record and interesting briefs, I am convinced that much that has been done herein is wholly beside the mark. What the trustee wants to do is to sell something that he says belonged to the bankrupt, and therefore belongs to him. The bankrupt denies that that something either belonged to her at the time of petition filed, or is of such a nature that it can ever become vested in her trustee in bankruptcy. This is the issue between the parties, and, in order to solve it, the trustee might have filed a petition in this court, as was done in Re Hoadley (D. C., N. Y.) 3 Am. Bankr. Rep. 780, 101 Fed. 233. If that proceeding had been chosen, all the questions so learnedly discussed by counsel would have been proper for consideration here.

But this was not only forum open to the trustee, and he chose to sue in the Supreme Court of the state which had jurisdiction and wherein any adjudication of right is entitled to all the respect owing to the final judgment of any court of competent jurisdiction in a civilized country. In that suit the trustee charged (paragraph 8, amended complaint) that Mrs. Seavey was vested with an interest in a certain trust fund, and that she had assigned it in fraud of creditors; wherefore trustee-plaintiff prayed (second prayer) that such property and assets "be declared to belong" to himself as trustee. Mrs. Seavey came into court, and pleaded that at the time of the alleged fraudulent assignment she had no vested interest in the estate in question, nor any interest which would in any way vest in her trustee in bankruptcy. These issues were tried and decided in favor of the trustee, so it is judicially declared that Mrs. Seavey had an assignable interest, that she did assign it in fraud of creditors, and that the trustee is entitled to it; in short, he is the owner of certain salable property

so far as the judgment of a court of competent jurisdiction can make an owner of him.

This being the case, the trustee had the legal right, and the duty cast upon him by law, of selling what he owns as trustee for the benefit of creditors. Therefore the bankrupt seeks to stay the trustee in the exercise of his legal duty on grounds which amount to no more than this, viz., that as matter of law the Supreme Court of New York was wrong in its decision. This doctrine logically extended would permit any party defeated in plenary suit by a trustee in bankruptcy to come into the bankruptcy court, and use that tribunal as one of appeal, and compel every victorious trustee to prove to the satisfaction of the bankruptcy judge that the courts wherein he had won his victory had not erred in granting him the same. It seems to me that this strikes at the very root of legal proceeding. If there be error in Judge Kellogg's judgment, the courts of the state of New York are open to correct it, and any endeavor to collaterally impeach such judgment in the manner here shown is wholly disapproved.

The petition of review is dismissed and the stay vacated.