### In re JUTKOVITZ.

(District Court, E. D. New York. July 29, 1919.)

1. BANKRUPTCY �köⁿ408(1)—DISCHARGE—RELEASES.

 On a bankrupt's hearing for discharge, releases from certain creditors *held* inadmissible to excuse bankrupt's failure to insert such creditors' names in his schedules.

2. BANKRUPTCY �köⁿ414(3)—DISCHARGE—SUFFICIENCY OF EVIDENCE.

 At hearing on objections to a bankrupt's discharge, evidence *held* to sustain a special master's findings that the bankrupt failed to schedule a piano, and sought to defraud his creditors by transferring assets to his father, although a state court had refused to set aside the transfer.

In Bankruptcy. In the matter of Alexander Jutkovitz, bankrupt. On hearing on special commissioner's report sustaining objections to bankrupt's discharge. Report confirmed, and discharge denied.

Harry J. Shields, of Brooklyn, N. Y., for trustee.
J. Baldwin Hand, of New York City, for bankrupt.

---

⊙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. The special commissioner has sustained two of the specifications of objections to the bankrupt's discharge. It appears that this bankrupt conducted a moving picture theater. He is a comparatively young man, and has a brother who also has been engaged in the moving picture business. Their father is a tradesman, who seems to have been prosperous, and who has invested considerable money in the theatrical enterprises managed now by his sons for him. Since the adjudication in bankruptcy the bankrupt has been working for his father, but says that he has received no salary beyond living expenses and such amount as he may expend. He assists his father in the management of a moving picture theater which was leased on the 26th day of October, 1914. The rent for this theater is $666.66 per month, and on the·day upon which his father leased this theater the bankrupt son paid to his father $2,666. Upon one occasion, when giving testimony the son happened to use the word $2,000 in stating the amount of this payment to his father, and considerable time has been devoted during the present hearing to an explanation by the son that he really intended to refer to the $2,666 payment. ·The reason for this payment was evidently to put the money, amounting to the $2,000, which the son then had in his bank account, into the hands of his father, so that it might go into the new moving picture business. He also paid $666, which was apparently the first month's rent for the new place. He transferred to his brother a piano, about which considerable controversy has been had, and which had been delivered to him while a larger piano was being repaired. This larger piano seems to be still in the hands of the company which was making the repairs, and that company makes no claim for the smaller piano, inasmuch as the bankrupt had become entitled to some commissions, amounting substantially to the value of the piano.

[1] The bankrupt, upon the present hearing to confirm the commissioner's report, has offered in evidence certain releases signed by the company owning this small piano before it was transferred to the bankrupt for commission, and also releases from the bankrupt's father, in order to bear out the bankrupt's contention that he did not make false schedules by failing to insert in his schedules the name of his father as a creditor or the name of this piano company. The court has refused to receive these releases, upon the authority of the case of Josephs v. Powell & Campbell, 213 Fed. 627, 130 C. C. A. 291, and, inasmuch as the specifications relating to the alleged omission in the schedules have not been sustained, it· would be immaterial whether these releases are added to the record or not.

[2] The findings of the special master that·the bankrupt failed to schedule the larger piano in his assets, and that the bankrupt sought to defraud his creditors by concealing his assets, appear upon a reading of the testimony to be abundantly sustained. There has been much litigation between the creditors and the trustee, with the bankrupt, and the grantees or transferees of his property. Much hard feeling seems to have been generated by an action in the state court to set aside the transfer· of this property. This resulted in a decree in favor of the

defendant. The findings of the court in that suit are urged as a basis for the opposition in this court to confirmation of the master's report recommending a denial of the discharge; but it is apparent that the action in the state court to set aside the conveyances did not depend alone upon the mental attitude of the bankrupt, and upon the attempt on his part to put himself in a position where the moneys which he had in bank would be saved to his family, and would be preserved in such a way that he might get the benefit thereof. His friendly relations with his father, and the way in which he and his father have conducted the moving picture business since the adjudication in bankruptcy, indicate that, even if his father was honest in his receipt of this property in payment of the pre-existing debts, nevertheless the son did not reveal to his father his actual position in relation to his creditors, and did transfer the property to his father at that time with the express idea of continuing his friendly relations with his father, of protecting his father, so that the father would be willing to support the bankrupt in the future, and to inaugurate a course of conduct by which his creditors would be entirely deprived of receiving any part of the moneys which they were fairly entitled to.

For these reasons, the report of the master will be confirmed, and the discharge denied.