In re DAVIS.

District Court, D. Massachusetts. October 31, 1928.

No. 38060.

Hermanson & Silverman, of Boston, Mass., for bankrupt.

Jacobs & Jacobs, of Boston, Mass., for creditor.

884

MORTON, District Judge. ■ The bankrupt was the wife of Nathan Davis. She did business in her own name under a married woman's certificate. Two grounds of objection to her discharge have been sustained by the referee's report on the facts. The first relates to an assignment by her to one Forman of accounts receivable. The referee finds it to have been made with intent to hinder, delay, and defraud her creditors. Litigation over this assignment is pending between Forman and the trustee. By a decision of the Circuit Court of Appeals, handed down on June 13, 1928 [Forman v. Jacobs, 26 F.(2d) 764], the Forman claim was sent back for further hearing in the District Court. While that matter is still unsettled, this ground of objection cannot well be passed upon.

■ The second ground of objection relates to the concealment of substantial sums of money on or about February 9, 1927, with intent to hinder, delay, and defraud her creditors. The evidence not being reported, the facts must be taken as stated by the referee. From his report it appears that, some years before bankruptcy, Nathan Davis assigned to his wife three policies of insurance on his life. Both he and she filed voluntary petitions in bankruptcy at about the same time, hers being filed on March 12, 1927. Shortly before this was done she indorsed and delivered to her husband the insurance policies just referred to in order to enable him to secure the cash surrender value thereof, which he did. None of this money reached her trustee. The policies were not mentioned in the schedule of either Mary I. Davis or her husband. "The fact of their surrender and the receipt of the money in settlement of this surrender were not disclosed to the trustee until investigation was well under way." Report, page 3. The referee's finding that there was a willful and fraudulent concealment of assets is clearly not unreasonable.

The only real question on this objection is how far Mary I. Davis, the present bankrupt, was affected by the fradulent intent of her husband, Nathan. The referee reports that she was "a respectable appearing woman, who has been too much occupied with housewifely duties to know anything about her husband's affairs or to exercise any control thereof. * * * She has had no control over the events I have recited. I am not even sure that she is conscious of what has happened." Report, p. 3. Elsewhere in the report the referee finds, in substance, that Mrs. Davis left to her husband the entire

management of the business, which was carried on in her name, herself knowing little or nothing about it.

■ It is argued for the wife that the fraudulent intent which is necessary to bar a discharge upon the ground alleged must be the conscious fraudulent intent of the bankrupt. In Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, 22 A. B. R. 1, and Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419, 38 A. B. R. 664, it was held that fraud of the sort here involved is "actual fraud." Such fraud on the part of the husband as manager of her business has been clearly shown. The present question is whether it is attributable to the wife. No decision in bankruptcy which throws much light upon the point has come to my attention. In so far as property rights and civil liability were concerned, Mrs. Davis was clearly bound by her husband's actions. It probably did not render her criminally liable for the act expressly requires that criminal concealment shall have been both knowing and fraudulent. Section 29; 11 USCA § 52. By the provisions of the act a discharge shall not be granted; if the bankrupt is shown to have committed any offense punishable by imprisonment under the Bankruptcy Act, or to have transferred or concealed any of his property with intent to hinder, delay, or defraud his creditor. Section 14b (1, 4); 11 USCA § 32(b) (1, 4). It will be noticed that the words "knowingly and fraudulently," which qualify the criminal provisions of the act, do not appear in the fourth ground of opposition to discharge. Although the right to the discharge is highly personal, the proceedings relating to it are civil in their nature.

■ In the present instance the bankrupt turned over the entire management of the business to her husband, paying no attention to it herself, and signing blindly whatever papers he asked her to sign. It is not the case of an employee going wrong, or of an agent violating instructions. The manager was the bankrupt, as far as conduct of the business was concerned. It is well recognized that an unsupervised general agency of this character exposes the principal to greater personal liability than one which is narrower or more closely followed up. Speaking with reference to the principal's criminal or penal liability for the acts of his agent, Mechem says: "For what they (the agents) may do outside of the employment he (the principal) is of course, not responsible; but if the prohibited act be done by them in the course of their employment, he must respond.

This is particularly true in those cases where the principal confides, in a greater or lesser degree, the conduct and management of his business to his agents. * * * And if by reason of his lack of oversight, or their own carelessness or unfaithfulness, the prohibited act is done, he should be held accountable. He, therefore, cannot relieve himself of responsibility for the manner in which his purposes are carried out by turning over the management of his business to agents." Mechem on Agency (2d Ed.) § 2007. In Rex v. Walter, 3 Esp. 21, the publisher of the London Times was held criminally responsible for a libelous publication made by his agents without his knowledge. The publisher of the Morning Journal had the same experience in Rex v. Gutch, 1 Moo. & M. 433. See Mechem on Agency (2d Ed.) § 2008, collecting similar cases of criminal responsibility by the principal for acts of his agent. Such decisions go much beyond what is necessary to hold the bankrupt responsible in this civil, though personal, proceeding for the acts of her manager in the conduct of her business. Moreover, in certain cases in which fraud is the issue, the law regards a negligent or intentional ignorance as the equivalent of actual knowledge. It would be unfortunate if a person whose deliberate inattention to his business had permitted it to be made an instrument of fraud, were allowed to escape personal—as distinct from criminal—liability therefor.

In my opinion, the fraudulent intent with which the husband, as general manager of his wife's business, dealt with the proceeds of the insurance policies, is attributable to her, with the result that the discharge should be refused.