**In re HILLEBRAND.**

**No. 6328.**

District Court, N. D. Ohio, W. D.

Aug. 27, 1930.

Report of Special Master.

To the Honorable George P. Hahn, United States District Judge:

The undersigned, heretofore appointed special master herein, by order dated April 10, 1930, to inquire into the specifications in opposition to the discharge of said bankrupt, to hear testimony, and to report his findings thereon, together with the testimony, to the court, does hereby report as follows:

Hearings were had before me at which Messrs. Cotter & McFellin, Toledo, Ohio, appeared on behalf of Frank A. Carabin, the objecting creditor, and Messrs. Geo. A. Bassett and Frank H. Foster appeared on behalf of the bankrupt, upon which hearings testimony was taken and evidence introduced, as shown by the transcript of proceedings and exhibits herewith transmitted.

The pleadings herein consist of specifications in opposition to discharge of bankrupt, answer to specifications, supplemental answer and exceptions to the specifications, amended supplemental answer and exceptions to the specifications, and reply to answer to specifications and supplemental answer and exceptions to specifications.

The specifications of objections are based upon the following grounds:

(1) That the bankrupt "failed to keep books of account or records from which her financial condition and business transactions might be ascertained."

This ground was not insisted upon or argued by counsel for the objector.

(2) That within a period of twelve months immediately preceding the filing of the petition in bankruptcy herein, which was filed February 11, 1929, the bankrupt concealed from her creditors and from the trustee herein, with intent to hinder, delay, and defraud her creditors, certain moneys, to wit:

(a) The sum of $750, which, it is alleged, the bankrupt received in July, 1928, and caused to be deposited by her sister, Julia Maier, in the name of said sister, for the use and benefit of the bankrupt, in the Security Savings Bank & Trust Company, Savings Department, Toledo, Ohio, and which continued to be her property and was an asset of her estate at the time she filed her voluntary petition in bankruptcy.

(b) The sum of $40 of which the bankrupt was the owner at the time she filed her petition, said moneys being on deposit to her credit in the Mutual Savings Association of Toledo, Ohio.

(3) That the said bankrupt made a false oath in said bankruptcy proceedings by failing to list said sums of $750 and $40 as assets in her schedules, and in testifying before the referee, upon general examination, that said schedules contained a true and correct statement of all her assets and that she had no other property of any kind, when, as a matter of fact, she was at the time the owner of said sums.

Taking up first the objection based upon the item of $40, it is admitted that the bankrupt at the time of her bankruptcy had an account at the Mutual Savings Association of Toledo, under the name of Frieda Maier, her maiden name, in which there was a balance of $40, which she did not list in her schedules. In explanation of why it was not listed in her schedules, the bankrupt testified that she told counsel of this deposit before the schedules were made up, but that she

learned for the first time at her examination before the referee that her counsel misunderstood her; that upon learning the facts her counsel advised her to turn the deposit over to the trustee, which was done. Her counsel, Mr. Frank H. Foster, testified that he understood the bankrupt to say, at the time he was getting information from her upon which to base the schedules, that she had a Christmas savings account in the Mutual Savings Association, but that it was in her mother's name and that is the reason he did not schedule it as an asset of the bankrupt; that it developed at the hearing before the referee that while the deposits were being made for the mother the account was in the name of bankrupt and he advised that it be turned over to the trustee. (Rec. pp. 64, 71.)

It seems to us that the weight of evidence offered is insufficient to show that the bankrupt knowingly and fraudulently omitted the deposit of $40 from her schedules or so testified with regard thereto before the referee, and we are of the opinion that the specification of objection on this ground has not been sustained.

As to the $750 item, the bankrupt in her answer denies that the same ever belonged to her. In addition to raising this question of fact, she urges res adjudicata as a bar to the prosecution of the objection on this ground. This question, if decided in favor of the bankrupt, makes unnecessary in this court the determination of the question of fact involved.

The trustee under the authority of this court commenced an action in the court of common pleas of Lucas county, Ohio, against Julia Maier, the sister of the bankrupt, alleging that the said $750 deposited to her credit was the property of the bankrupt and assets of her estate, and seeking to recover the same on that ground; the case was tried before a judge and jury in that court, which jury rendered a verdict in favor of the said Julia Maier and against the trustee, and the court, in its journal entry, found *"that the defendant Julia Maier is the sole owner of the $750.-00 and all accumulations thereon, now on deposit in the name of the said Julia Maier and that the plaintiff has no right, title or interest therein."* The case was appealed by the trustee to the Court of Appeals of Lucas County and there affirmed; the court in its journal entry making exactly the same finding as that of the common pleas court above quoted.

It is the contention of counsel for the bankrupt that the judgment in the state court is conclusive upon the question of the ownership of the $750, and that this question of fact cannot be re-examined in this proceeding. Counsel for the objector contend that the issue here is not identical nor is it between the same parties, and that the judgment of the state court is not res adjudicata.

The cases upon this subject are very much in conflict, and in order that the court may have before it the decisions of some of the courts on this subject, we call attention to the following:

A case supporting the contention of the objector is In re Cornell, 97 F. 29, 3 A. B. R. 172 (D. C. N. Y. 1899), holding: "2. A court of bankruptcy will not stay its decision upon a bankrupt's application for discharge, to await the result of a pending action in a state court wherein creditors of the bankrupt seek to set aside a transfer of property made by him before the adjudication of bankruptcy, and which they allege to have been fraudulent as to creditors, the same plaintiffs opposing the bankrupt's discharge on the ground of the same alleged fraud; for the issues are not identical, nor would the decree of the state court determine the right of the bankrupt to be discharged."

There is no discussion of cases in this opinion.

A case against the contention of the objector is In re Skinner, 97 F. 190, 3 A. B. R. 163 (D. C. Iowa, 1899), a decision by Judge Shiras, in which it was held: "2. A judgment rendered by a state court in a suit to which the bankrupt, his wife, and the trustee, as the representative of creditors, were all parties, finding that a conveyance of property by the bankrupt to his wife was fraudulent as to creditors, and should be set aside, and the property transferred to the trustee, is conclusive evidence of the points decided, on the bankrupt's subsequent application for discharge, opposed by creditors on the ground of such fraudulent conveyance as a concealment of assets."

This case cites and quotes from Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 48, 18 S. Ct. 18, 42 L. Ed. 355.

Another case against the contention of the objector is In re McGurn, 102 F. 743, 4 A. B. R. 459 (D. C. Nev., 1900), in which case a creditor commenced suit in the state court (24 Nev. 370, 55 P. 304, 56 P. 94), where judgment was entered against the creditor upon a verdict that the transfer by the bankrupt to his wife of his business and property was not made with intent to hinder, delay,

and defraud creditors. Objection was made to the discharge by the creditor on the ground that the bankrupt was the owner of the said business and property and which he failed to schedule. The court held that the action of the state court was res adjudicata. It said on page 745 of 102 F., and page 462 of 4 A. B. R.: "This court is requested to review the evidence in that case, and to decide that the courts of the state erred in not rendering a judgment in favor of the opposing creditor herein. This it respectfully declines to do. There must be some other facts, some other proceedings, some further evidence, in order to bring the case within the provisions of the bankruptcy act, and justify this court in refusing to grant petitioner's application."

Another case in point along the same line is In re Tiffany, 147 F. 314, 17 A. B. R. 296 (D. C. N. Y. 1906, Hough, J.), in which it was held: "1. The judgment of a state court, in a suit brought by a bankrupt's trustee, refusing to set aside a transfer of property made by the bankrupt as fraudulent, concludes creditors, who cannot thereafter set up the same ground to defeat the bankrupt's discharge."

The court cites, among other cases, Rejall v. Greenhood, 92 F. 945 (9 C. C. A., 1899), which holds: "1. In a suit to set aside an assignment for the benefit of creditors, the assignee represents all the beneficiaries of the trust; and a judgment against him is binding upon such beneficiaries, though they were not parties to the suit."

The court in the Rejall Case cites a number of cases, including several from the Supreme Court of the United States, in one of which, Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843, opinion by Waite, Ch. J., it is said, page 162 of 93 U. S.: "The trustee is himself the chosen representative of all, and whatever binds him must bind them."

Another case against the contention of the objector is that of In re Winchester, 155 F. 505 (D. C. Pa. 1907, Ewing, J.), where it was held: "A bankrupt cannot be refused a discharge on the ground of fraudulent concealment of assets because of his failure to state in his schedules, or to advise his trustee of the fact, that he had expended money in the improvement of property owned by his wife, where in a plenary suit by the trustee against the wife it was determined that the creditors had no lien upon or interest in the property because of such expenditure."

In this case the special master found the bankrupt guilty of fraudulent concealment and recommended refusal of his discharge. The court says on page 506 of 155 F.: "That decree [in the state court] virtually determines that the bankrupt had no interest in the real estate of his wife subject to the claim of his creditors, and consequently in failing to disclose the expenditures he had made in making these improvements he cannot be guilty of a concealment of assets." No cases are cited in this opinion.

A case supporting the contention of the objector is In re Cohen, 192 F. 751, 26 A. B. R. 544 (D. C. N. J. 1911, Rellstab, J.), where it is held: "Where a referee in bankruptcy was directed to take proof and report findings on exceptions to the bankrupt's petition for discharge, it was his duty to exercise an independent judgment on the facts brought before him, and not to follow the judgment of another tribunal on the facts brought before it, though considering the identical question raised by the specifications; and hence a report that he was still convinced that the bankrupt had sworn falsely to material facts, as objected in the specifications, but that, in view of the fact that a jury on indictment had found him not guilty of such offense, the referee recommended the bankrupt's discharge, was erroneous." There were no cases cited in this opinion and there was no discussion of the law.

Another case in support of the position of the objector is In re Mayer, 195 F. 571, 28 A. B. R. 342 (D. C. N. Y. 1912, Mayer, J.) in which it was held:

"1. A judgment, in an action in a state court to recover a preferential payment to which the bankrupt was not a party, does not operate as an estoppel or a bar against the bankrupt seeking a discharge. * * *

"3. A special master directed to take proof and make a report on exceptions to a bankrupt's petition for discharge must exercise an independent judgment on the facts brought before him, and should not follow the judgment of another tribunal on facts brought before it, though the identical question may have been tried out before such tribunal on substantially the same facts."

The court cites no other cases than the case of In re Cohen, supra.

Another case against the contention of the objector is that of In re Seavey, 195 F. 825, 27 A. B. R. 373 (D. C. N. Y. 1912, Hough, J.), holding: "Where a bankrupt's trustee instituted proceedings in a state court to set aside as fraudulent an assignment of an alleged interest in certain property under the will of her grandfather, and to establish his

right thereto as trustee, and the bankrupt duly defended such action, in which the trustee was successful, the judgment, in the absence of an appeal therefrom, was conclusive, and could not be collaterally attacked or reviewed for error in the bankruptcy proceeding."

A somewhat different rule was laid down in the case of In re Krall (D. C. Conn. 1912, Platt, J.) 196 F. 402, in which it was held: "Where, in prior proceedings in bankruptcy, it had been determined that the bankrupt was guilty of concealment of assets, such determination was res judicata, and established a prima facie case in support of objections to the bankrupt's discharge on that ground." The court said on page 403 of 196 F.: "The question at issue before him [the master] as to concealment of assets was res adjudicata, and the record evidence made out a prima facie case. It presented a decision of the same issue in the same case and practically between the same parties, because these objecting creditors here were represented by the trustee in the earlier controversy." No cases are cited on this point.

Another case along the same line is that of In re Shear, 201 F. 460 (D. C. N. Y. 1913, Hazel, J.), in which it was held: "A prior adjudication that the bankrupt had made a false oath, in the course of his examination in the relation to the conduct of his business, on the certificate of the referee, and summary punishment for contempt, constitute prima facie proof of a relevant specification against his application for the discharge; but he may still show that the offense was not knowingly and fraudulently committed."

A case involving this question, which has been cited in support of their respective contentions, by both the bankrupt and objector, is that of Sawyer v. Orlov, 15 F.(2d) 952, 9 A. B. R. (N. S.) 6 (1 C. C. A. 1926), petition for certiorari denied, 274 U. S. 736, 47 S. Ct. 574, 71 L. Ed. 1316 (1927), in which it was held:

"1. It is wholly irregular for referee, on petition for discharge of bankrupt, opposed on ground that, within four months before filing of petition in bankruptcy, bankrupt made transfer with intent to hinder, delay, and defraud creditors, to take into consideration finding of court in suit by trustee in bankruptcy to set aside the transfer.

"2. Referee's finding that bankrupt made transfer with deliberate intent to defraud creditors, affirmed by decree denying composition, was conclusive determination of the fact between the parties to composition proceeding, when called in question in subsequent proceeding for discharge of bankrupt, to which they were likewise parties.

"3. Proceeding for bankrupt's discharge being different cause of action from prior one for composition, decree in the prior proceeding need not be pleaded to be admissible in evidence in the later proceeding and is there conclusive as to the matters directly in issue and either admitted by the pleadings or actually tried in the prior proceeding between the same parties."

The first paragraph of the syllabus above quoted is relied upon by counsel for the objector. The court cites no cases in its opinion in support of this proposition. The second paragraph of the syllabus is relied upon by counsel for the bankrupt. The court cites upon this proposition the following cases: Sutton v. Wentworth (C. C. A.) 247 F. 493, 501; Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355.

Another case sustaining the contention of the objector is that of In re Jutkovitz (D. C. N. Y. 1919, Chatfield, J.), 259 F. 915, in which the court held: "2. At hearing on objections to a bankrupt's discharge, evidence held to sustain a special master's findings that the bankrupt failed to schedule a piano, and sought to defraud his creditors by transferring assets to his father, although a state court had refused to set aside the transfer."

A case favoring the contention of the objector is that of In re Weiner, 28 F.(2d) 881, 12 A. B. R. (N. S.) 651 (D. C. Md. 1928, Coleman, J.), in which it was held: "Court's refusal to confirm composition offered to creditors by bankrupt, on ground that condition of bankrupt's books cast doubt on bona fides of bankrupt's conduct of his business, under Bankruptcy Act, § 12d, 11 USCA § 30(d), held not necessarily res judicata on bankrupt's subsequent application for discharge under section 14b, 11 USCA § 32(b)." There is no discussion of cases in the opinion.

Another case holding against the contention of the objector is In re Davis (D. C. Mass. 1928, Morton, J.), 28 F.(2d) 883, in which it was held: "1. Court in hearing objections to bankrupt's discharge, could not determine whether assignment was made with intent to hinder, delay, and defraud creditors, where litigation over assignment was still pending between the assignee and the trustee

in bankruptcy." In this case there was litigation brought in the District Court over the assignment of accounts, which was still pending, having been sent back for further proceedings by the Circuit Court of Appeals (Forman v. Jacobs, 26 F.(2d) 764); this transaction being involved in one of the grounds of objection to discharge. The court said on page 884 of 28 F.(2d): "While that matter is still unsettled, this ground of objection cannot well be passed upon." No cases are cited in the opinion on this point. The discharge was refused. Upon appeal, the Circuit Court of Appeals [Davis v. Jacobs, 35 F.(2d) 936] reversed the case upon other grounds than the point referred to above and did not pass upon that question.

Another case in favor of the contention of the bankrupt is In re Ruthkowski, 39 F.(2d) 969, 15 A. B. R. (N. S.) 602 (D. C. Minn. 1930, Sanborn, J.), in which it was held: "A judgment of a state court, in an action by a trustee in bankruptcy against a bankrupt and his son, that a chattel mortgage was given by the bankrupt with intent to hinder and defraud his creditors, is conclusive in subsequent application for a discharge and objections thereto." The court cites among other cases Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355, and In re Tiffany (D. C.) 147 F. 314.

It would seem to us that the better reason and the weight of authority support the conclusion that the judgment of the state court is conclusive here. A leading and controlling case on this subject is that of Southern Pacific Railroad Company v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355, cited and quoted in some of the cases above referred to, in which it was held: "A right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." The court said on this subject, page 48 of 168 U. S., 18 S. Ct. 18, 27:

"The importance of this question, independently of the magnitude of the interests to be affected by our decision, and of the earnest contention of learned counsel, justifies a reference to some of the adjudged cases, showing the grounds upon which this salutary rule rests.

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

"Among the cases in this court that illustrate the general rule are Hopkins v. Lee, 6 Wheat. 109, 113 [5 L. Ed. 218]; Smith v. Kernochen, 7 How. 198, 216 [12 L. Ed. 666]; Thompson v. Roberts, 24 How. 233, 240 [16 L. Ed. 648]; Washington, Alexandria & Georgetown Steam Packet Co. v. Sickles, 24 How. 333, 340, 341, 343 [16 L. Ed. 650]; Russell v. Place, 94 U. S. 606, 608 [24 L. Ed. 214]; Cromwell v. Sac County, 94 U. S. 351 [24 L. Ed. 195]; Campbell v. Rankin, 99 U. S. 261 [25 L. Ed. 435]; Lumber Co. v. Buchtel, 101 U. S. 638 [25 L. Ed. 1072]; Bissell v. Spring Valley Township, 124 U. S. 225, 230, 8 S. Ct. 495 [31 L. Ed. 411]; and Johnson Co. v. Wharton, 152 U. S. 252, 14 S. Ct. 608 [38 L. Ed. 429]."

The court goes on to comment upon the cases cited. It further says on pages 59, 60 of 168 U. S., 18 S. Ct. 18, 31: "But according to the weight of authority, and upon principle, the former judgment, if admissible in evidence at all, is conclusive of the matters put in issue and actually determined by it. Mr. Greenleaf correctly says that 'the weight of authority, at least in the United States, is believed to be in favor of the position that, where a former recovery is given in evidence, it is equally conclusive, in its effect, as if it were specially pleaded by the way of estoppel.' 1 Greenl. Ev. § 531. This

view is in accord with the decisions of this court above cited. See, also, Marsh v. Pier, 4 Rawle [Pa.] 273, 288 [26 Am. Dec. 131]; Lawrence v. Hunt, 10 Wend. [N. Y.] 80, 83 [25 Am. Dec. 539]; Betts v. Starr, 5 Conn. 550 [13 Am. Dec. 94]; Sawyer v. Woodbury, 7 Gray [Mass.] 499, 502 [66 Am. Dec. 518]; Jennison v. West Springfield, 13 Gray [Mass.] 544; Cannon v. Brame, 45 Ala. 262; Trayhern v. Colburn, 66 Md. 277, 278, 7 A. 459; Garton v. Botts, 73 Mo. 274, 278; Walker v. Chase, 53 Me. 258, 260; Lynch v. Swanton, 53 Me. 100, 102; Prather v. Owens, Cheves [S. C.] 236; Jones v. Weathersbee, 4 Strob. [S. C.] 50, 54, 55 [51 Am. Dec. 653]; Warwick v. Underwood, 3 Head [Tenn.] 238, 240 [75 Am. Dec. 767]; Isaacs v. Clark, 12 Vt. 692, 694 [36 Am. Dec. 372]."

A later case in the Supreme Court of the United States involving a similar question is that of United States v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262, in which it was held: "While the doctrine of res judicata does not apply to unmixed questions of law, a fact or right distinctly adjudged cannot be disputed in a subsequent action between the same parties, even upon another demand and though the original determination was reached upon an erroneous view or application of the law."

The court says on this subject in its opinion on pages 241, 242 of 266 U. S., 45 S. Ct. 66, 67:

"The general principles are well settled, and need not be discussed. The scope of their application depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits constitutes an absolute bar to the subsequent action. In the latter case the inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action. Cromwell v. County of Sac, 94 U. S. 351, 352, 353, 24 L. Ed. 195. The rule is succinctly stated in Southern Pacific R. R. Co. v. United States, 168 U.-S. 1, 48, 18 S. Ct. 18, 27, 42 L. Ed. 355:

" 'The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.'

"And in New Orleans v. Citizens' Bank, 167 U. S. 371, 396, 17 S. Ct. 905, 913, 42 L. Ed. 202, this court, speaking through Mr. Justice White, said:

" 'The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies.' And see Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 68 L. Ed. 165.

"The suits here are upon different demands; and the point at issue is to be determined by applying the second branch of the rule. The question expressly and definitely presented in this suit is the same as that definitely and actually litigated and adjudged in favor of the claimant in the three preceding suits, viz: whether he occupied the status of an officer who had served during the Civil War.

"The contention of the government seems to be that the doctrine of res judicata does not apply to questions of law; and, in a sense, that is true. It does not apply to unmixed questions of law. Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question* or *right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law. That would be to affirm the principle in respect of the thing adjudged but, at the same time, deny it all efficacy by sustaining a challenge to the grounds upon which the judgment was based. See Gunter v. Atlantic Coast Line R. R. Co., 200 U. S. 273, 291, 26 S. Ct. 252, 50 L. Ed. 477; United States v. California & Oregon Land Co., 192 U. S. 355, 358, 24 S. Ct. 266, 48 L. Ed. 476; Scotland County v. Hill, 112 U. S. 183, 187, 5 S. Ct. 93, 28 L. Ed. 692; Southern Minnesota Ry. Ext. Co. v. St. Paul & S. C. R. Co., 55 F. 690, 695, 696, 5 C. C. A. 249; Pittsford v. Chittenden, 58 Vt. 49, 57, 3 A. 323; Bigelow on Estoppel (6th Ed.) p.

112. A determination in respect of the status of an individual upon which his right to recover depends is as conclusive as a decision upon any other matter. Clemens v. Clemens, 37 N. Y. 59, 72; Pittsford v. Chittenden, supra."

With reference to the argument of the objector that the judgment against the trustee in the suit in the state court is not conclusive here because in that case the issues were not identical and the parties were not the same, the issue in the state court was the same as here, that is, as to who was the owner of the $750, and it would also seem to be the law that a judgment against the trustee is binding upon the creditors whom he represents. In re Tiffany (D. C.) 147 F. 314; Rejall v. Greenhood (C. C. A.) 92 F. 945; In re Winchester (D. C.) 155 F. 505; Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843, supra. This would probably be particularly so under the circumstances of this case, where the objecting creditor was represented by counsel who represented the trustee in the state case, actively participated in its proceedings and, being the largest and practically the only creditor, would have been the principal beneficiary of any judgment for the trustee rendered in the state case.

We presume there may be cases of objections to discharge based upon facts also involved in adjudications in other cases in which the trustee, a creditor, or the bankrupt is a party, where the principle of res adjudicata may not apply, as, perhaps, where the case in the other court involving the fact in question of the discharge is a criminal case and it is necessary to prove it beyond a reasonable doubt, whereas the bankrupt act provides that on the hearing of objections to a discharge, when the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which would prevent his discharge in bankruptcy, "the burden of proving that he has not committed any of such acts shall be upon the bankrupt"; or where the other case is an action to recover property and it is necessary to prove elements in order to recover which are not required to uphold the objections, such as notice or knowledge of insolvency; or where the evidence in the two cases is so materially different that the rule should not be applied.

If we did not believe that we were concluded by the judgment of the state court, our finding of fact would have been that this money was the property of the bankrupt.

Our conclusion is that the specifications of objections to the discharge of the bankrupt have not been sustained and that she should be granted her discharge.

We are transmitting herewith the pleadings and the transcript of proceedings and testimony together with the exhibits.

Respectfully submitted,

Fred H. Kruse,

August 27, 1930.          Special Master.

Report of Special Master.

To the Honorable George P. Hahn, United States District Judge:

The undersigned, to whom was re-referred the above case with instructions to take further testimony with reference to the participation, if any, by the bankrupt through the employment of counsel or otherwise in the defense of suit by the trustee against Julia Maier in the state court, does hereby report as follows:

A hearing was had before me at which Messrs. Cotter & McFellin appeared on behalf of Frank A. Carabin, the objecting creditor, and Messrs. George A. Bassett and Frank H. Foster appeared on behalf of the bankrupt, on October 10, 1930, upon which hearing testimony was taken, as shown by the transcript of proceedings transmitted herewith.

Witnesses examined were Harold W. Fraser, Mrs. Amelia Maier, Julia Maier, the bankrupt, Frank H. Foster, and George A. Bassett. Mr. Fraser, who represented Julia Maier in the state court case, testified that he had had frequent conferences with the bankrupt with regard to the case in the common pleas court and that she was present during the hearing of the case in that court and in the Court of Appeals. Mrs. Amelia Maier, the mother of the bankrupt, testified she consulted with Mr. Fraser in company with both her daughters with regard to the case in the common pleas court, and that Mr. Foster, who was the attorney for the bankrupt in her bankruptcy case, was also there occasionally; that they first went to see Judge Bassett and afterwards consulted Mr. Fraser, had frequent conferences with him, and were present during the trial of the case in both the common pleas court and the Court of Appeals. Julia Maier, the sister of the bankrupt, defendant in the state case, testified that she retained Judge Bassett and Mr. Fraser as attorneys in the case in the state court, and that her sister, the bankrupt, was there all the time the cases were being heard; that Frieda desired Judge Bassett to assist Mr.

Foster in the case and that upon the recommendation of Mr. Foster they employed Judge Bassett and Mr. Fraser. Frieda Hillebrand, the bankrupt, testified that she went to see Judge Bassett on the suggestion of Mr. Foster, who was her attorney in the bankruptcy case; that she consulted him on numerous occasions, was at Mr. Fraser's office several times consulting him regarding her interest in the case, was present at the trial in the common pleas court, and participated in that proceeding, and was also present in the Court of Appeals; that she was there for the purpose of protecting her own interest and that is why she employed Judge Bassett and Mr. Fraser; that she employed Judge Bassett as one of the attorneys in the case and afterward consulted and employed Mr. Fraser; that Judge Bassett was her attorney in the matter of objections to her discharge in bankruptcy and examined all the witnesses in her behalf. Mr. Foster testified that after the case was started in the common pleas court, Frieda and her sister consulted him and he directed them to Judge Bassett; that he had frequent consultations with Judge Bassett in the matter; that his work in connection with the case in the common pleas court was in the nature of counsel; that he did not take part in the actual trial of the case, although he was present in the courtroom a number of times. Judge Bassett testified that he acted as attorney for Frieda on the objections to the discharge; that in the trial of the case in the state court of Brannon, Trustee, versus Julia Maier, he appeared as the attorney for Julia Maier and the bankrupt. There was no testimony offered on behalf of Mr. Carabin, the objecting creditor, to contradict the testimony of these witnesses.

### Conclusion.

My conclusion is that the testimony adduced before me, as above set forth, shows the active participation by the bankrupt through the employment of counsel and otherwise in the defense of the suit of the trustee against Julia Maier in the state court.

Respectfully submitted,

Fred H. Kruse,

December 12, 1930.          Special Master.

Frank H. Foster, of Toledo, Ohio, for bankrupt.

Cotter & McFellin, of Toledo, Ohio, for objecting creditor, Frank Carabin.

HAHN, District Judge.

This matter came on to be heard this day and date upon report of one Fred H. Kruse, Esquire, to whom as special master was referred by order of court duly entered herein the petition of the bankrupt for discharge, and the specifications in opposition thereto having been filed in this court, and no objection to said report having been filed within the time specified by law. Now, upon consideration of said bankrupt's petition for discharge, said specifications in opposition thereto and said report of said special master, it is ordered that the said report of the said special master be, and the same hereby is, approved and confirmed, and that the said discharge of the said Frieda Hillebrand, bankrupt, be and it is hereby granted.